GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 2nd Floor
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MICHAEL BAUTISTA, M.D.
       Plaintiff,       Dkt. No.

   -against-         **COMPLAINT** 1:21−cv−00780 (MAD/DJS)

ALBANY MEDICAL CENTER,      **JURY TRIAL DEMANDED**

       Defendant.

------------------------------------------------------------------X

  Plaintiff Michael Bautista, M.D. by his attorneys Giskan Solotaroff & Anderson LLP, for his complaint against Defendant Albany Medical Center.

## Nature of the Action

  1.  This is an action for disability discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C.S. § 794 and the New York State Human Rights Law, Executive Law § 292.

  2.  Plaintiff Michael Bautista, M.D. was enrolled in the ophthalmology medical residency program at Defendant Albany Medical College and was employed as house staff at Defendant Albany Medical Center.

1

3. Dr. Bautista suffers from Attention-Deficit/Hyperactivity Disorder (ADHD), a recognized disability under the Rehabilitation Act and the NYSHRL. Defendants failed to accommodate Dr. Bautista's disability and discriminated against him in several respects, including failing to inform him of the results of an examination which revealed that he was unaware of the severity of the disability and under-medicated, and eventually terminating him from the residency program and terminating his employment.

4. Although, as a result of Dr. Bautista's internal appeal, he was eventually reinstated into the program and graduated, Defendants' actions resulted in a one-year delay in Dr. Bautista's graduation from the program and the loss of the opportunity to participate in a prestigious fellowship program. As a result, Dr. Bautista has suffered hundreds of thousands of dollars in economic damages as well as severe emotional distress damages.

## THE PARTIES

5. Plaintiff Michael Bautista is domiciled in Philadelphia, Pennsylvania.

6. Defendant Albany Med Health System ("Albany Med") is a not-for profit-corporation organized under the laws of New York. Albany Med is composed of Albany Medical Center, where Dr. Bautista was employed and Albany Medical College, where Dr. Bautista was enrolled in the Ophthalmology residency program, as well as other institutions. Albany Med is headquartered in Albany, New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims made pursuant to the Rehabilitation Act pursuant to 28 U.S.C. §1331.

8. This Court has jurisdiction over the claims made pursuant to the NYSHRL pursuant to 28 U.S.C. §1367.

9. Alternatively, pursuant to 28 U.S.C. §1332, the Court has jurisdiction by virtue of the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

10. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b) as Defendant is located in this District.

11. This Court has personal jurisdiction over Defendant because it is established under the laws of New York State and operates its business in New York State.

## THE FACTS

12. Dr. Bautista received his undergraduate degree from Siena College in 2012 and graduated from Albany Medical School in 2016.

13. When he was approximately 11 or 12 years old, Dr. Bautista was first diagnosed with ADHD. During high school, college and medical school, Dr. Bautista received accommodations for his ADHD.

14. After graduation from medical school in 2016, Dr. Bautista entered the four-year ophthalmology residency program ("Ophthalmology Program") at Albany Med. Like other medical residency programs, the Ophthalmology Program follows the academic year of July through June.

15. The first year of the program ("PGY1") year is spent as an internal medicine resident. Dr. Bautista received satisfactory evaluations in his PGY1 year.

16. Dr. Bautista began his PGY2 year on July 1, 2017. Dr. Bautista's performance was similar to the other residents in the Ophthalmology Program that year. Dr. Bautista received the highest score among the Albany ophthalmology PGY2 residents on the standardized ophthalmology examination given to all ophthalmology residents.

17. On May 14, 2019, late in Dr. Bautista's second year of residency, the Ophthalmology Program ordered Bautista to submit to a psychiatric examination.

18. There was no apparent justification for this examination.

19. The psychiatrist who performed the examination, Dr. Jeffrey Delisle, provided the resulting report to the Ophthalmology Program on July 5, 2019, but its content was not disclosed to Dr. Bautista.

20. Dr. Bautista later learned that the report confirmed that he suffered from ADHD but found that he underestimated the severity of the condition, was under-medicated, and that accommodations might be necessary.

21. During the examination, Dr. Delisle recommended to Dr. Bautista that he disclose his ADHD diagnosis to his supervisors in the Ophthalmology Program. Dr. Bautista did so within days.

22. The Ophthalmology Program did not thereafter accommodate Dr. Bautista's disability while instructing him or evaluating his performance in ophthalmology.

23. The Ophthalmology Program terminated Dr. Bautista from the residency program, for the first time, on January 3, 2020.

24. The bases of the termination were issues symptomatic of Dr. Bautista's ADHD, such as difficulty completing documentation on time and communication issues, which could have been addressed by minor and reasonable accommodations that were not implemented.

25. Dr. Bautista appealed his termination internally to the Albany Graduate Medical Education ("GME") office. Dr. Bautista presented rebuttal evidence and explained his disability.

26. Dr. Bautista's appeal was supported in writing by his treating physician, Dr. Edward Hallowell, who is a recognized expert in treating ADHD.

27. Dr. Bautista's appeal was successful, and he was reinstated to the program and resumed his employment in March 2020, but with a mandated contract extension which extended his originally scheduled graduation date of June 30, 2020 until December 20, 2020.

28. That term resulted in Dr. Bautista losing his compensation during the period from January to March 2020.

29. This delayed Dr. Bautista's graduation and caused him to lose a prestigious glaucoma fellowship at Mount Sinai Medical Center in New York City to which he had been previously accepted. That fellowship was scheduled to begin on July 1, 2020.

30. After Dr. Bautista was reinstated, the Ophthalmology Program implemented a uniquely harassing and difficult set of requirements for Dr. Bautista in an attempt to ensure he would not complete the residency program.

31. None of these requirements were imposed on other residents in the program

32. For example, the Ophthalmology Program imposed on Dr. Bautista a three-month "probationary period" that caused yet another delay of in his graduation date from the residency program. During the "probationary period," none of Dr. Bautista's effort or work would be counted towards his training requirements as a PGY4 Ophthalmology resident. Additionally, Dr. Bautista, was closely monitored and critiqued while being relegated to duties typical of a first year Ophthalmology resident. Even after successful completion of this probationary period, his program asked that he continue to take primary call as a senior resident, a task typically assigned to junior residents. The Ophthalmology Program did not treat other residents this way.

33. Additionally, the Ophthalmology Program required Dr. Bautista to complete a one to two week "ethics course" before he was allowed to resume his employment. Albany Med

generally required physicians who had demonstrated some lapse in professional ethics to take this course. However, the Ophthalmology Program required Dr. Bautista, who had no ethical issues, to take the course.

34. In June 2020, the Ophthalmology Program created a list of "deliverables" that Dr. Bautista would be required to complete in order to remain in the program. Not only were these "deliverables" not required of other residents in the program, but the list was created in a way specifically intended to make it difficult for a resident with ADHD to complete.

35. One deliverable was "submit[ting] your research manuscript for publication by July 1, 2020." This referred to a research project. Like other residents, Dr. Bautista had selected a topic in his first year of residency and thereafter conducted his research and collected the data.

36. Dr. Bautista had presented his preliminary findings at a national conference in May 2019.

37. Residents in the Ophthalmology Program did not typically have any set deadline for the publication of their research projects. Other residents were only expected to present a brief PowerPoint presentation regarding their research at a small monthly meeting for faculty and residents. Moreover, residents in the program normally were not required to present their research at a national conference, let alone in the very exacting and formal manner required for publication.

38. However, even though Dr. Bautista was not at that time scheduled to graduate until December 2020, the Ophthalmology Program required Dr. Bautista to finish the project by July 1, 2020, and to submit his research manuscript for publication. This required Dr. Bautista, who because of his ADHD should have been given more time for academic assignments, to

prepare and submit—in less than one month—a formal written manuscript for potential publication, along with all supporting graphs and tables.

39. The Ophthalmology Program's requirements were virtually impossible to meet, and made even more impossible by the program's assignment of Dr. Bautista to the time-consuming primary call schedule (normally a first-year responsibility) during the month of June 2020.

40. As anticipated by the Ophthalmology Program, Dr. Bautista did not complete the research requirement by the specified date. Though Dr. Bautista managed to complete the full manuscript by the deadline, he was unable to obtain the final revision from his research mentor in time to be submitted for publication by the specified deadline. The Ophthalmology Program used this as a basis to terminate his employment for the second time on July 8, 2020.

41. Dr. Bautista appealed this second discriminatory termination. This appeal was also successful, and Dr. Bautista was reinstated to the residency program in December 2020. Dr. Bautista graduated from the program on March 12, 2021, which was nine months later than he would have, absent the Ophthalmology Program's discriminatory conduct resulting in the two overturned terminations.

42. As a result of the Ophthalmology Program's discriminatory conduct, Dr. Bautista lost the opportunity to receive specialized training through the Mount Sinai glaucoma fellowship, which would have enhanced his career and earning potential and was delayed in beginning his career as an ophthalmologist, which resulted in lost earnings.

**FIRST CLAIM FOR RELIEF**
(Disability Discrimination in Violation of Rehabilitation Act)

43. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

44. At all times relevant to this action, Albany Med has been a recipient of federal financial assistance. This federal financial assistance includes but is not limited to Medicare/Medicaid reimbursement.

45. Moreover, Albany Med is principally engaged in the business of providing health care.

46. Dr. Bautista was an otherwise qualified individual with a disability.

47. Albany Med violated Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, by failing to accommodate Dr. Bautista's disability and subjecting Dr. Bautista to discrimination in employment as a result of his disability.

48. Solely by reason of Dr. Bautista's disability, he was excluded from employment and educational opportunities at Albany Med and was wrongfully subjected to discrimination.

**SECOND CLAIM FOR RELIEF**
(Retaliation in Violation of Rehabilitation Act)

49. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

50. At all times relevant to this action, Albany Med has been a recipient of federal financial assistance. This federal financial assistance includes but is not limited to Medicare/Medicaid reimbursement.

51. Albany Med retaliated against Dr. Bautista based on his exercise of his rights under the Rehabilitation Act and his opposition to disability discrimination in violation of the Act.

### THIRD CLAIM FOR RELIEF
(Disability Discrimination in New York State Human Rights Law)

52. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

53. Albany Med failed to accommodate Dr. Bautista's disability and discriminated against him in the terms and conditions of his employment in violation of the New York State Human Rights Law.

### FOURTH CLAIM FOR RELIEF
(Retaliation in Violation of NYSHRL)

54. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

55. Albany Med retaliated against Dr. Bautista because of his opposition to disability discrimination in violation of the New York State Human Rights Law.

### JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

A. Awarding Plaintiff lost wages and compensatory damages including damages for emotional distress;

B. Awarding Plaintiff punitive damages;

C. Awarding reasonable attorneys' fees, costs, and expenses; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

Dated:	New York, New York
	July 8, 2021

                                      GISKAN, SOLOTAROFF & ANDERSON LLP

By:   /s/
      Jason L. Solotaroff
      jsolotaroff@gslawny.com
      (646)964-9640
      90 Broad Street, 2ndFloor
      New York, New York 10004
      *Attorney for Plaintiff*